## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SERVICE EMPLOYEES INTERNA-
TIONAL UNION NATIONAL INDUSTRY
PENSION FUND et al.,

*Plaintiffs*,

v.

METRO MAN I, INC. d/b/a WESTWOOD
NURSING CENTER,

*Defendant*.

Civil Action No. 22-748 (TJK)

### MEMORANDUM OPINION

Plaintiffs, a pension fund and its board of trustees, sued Defendant, a nursing center, for its failure to make certain contributions into the pension fund and to provide it certain remittance reports under the governing collective bargaining agreements, the fund's collection policy and trust agreement, and the Employee Retirement Income Security Act of 1974. To date, Defendant has failed to answer or otherwise defend this action. Thus, Plaintiffs move for default judgment and ask the Court to award damages for Defendant's delinquent contributions plus interest, liquidated damages, attorney's fees and costs, and injunctive relief. For the below reasons, the Court will grant the motion for default judgment and award most of the relief requested.

### I.      Background

Plaintiff Service Employees International Union ("SEIU") National Industry Pension Fund is a multiemployer employee benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA"). ECF No. 1 ("Compl.") ¶ 4 (citing 29 U.S.C. § 1002(37)(A)). The pension fund is administered by its board of trustees—the other named plaintiff—a designated fiduci-

ary of the pension fund as defined under ERISA.  *Id.* ¶ 6 (citing 29 U.S.C. § 1002(21)(A)).  Defendant Metro Man I, Inc., which does business as Westwood Nursing Center ("Westwood"), is a participating employer in the pension fund and an "employer" as defined under ERISA.  *Id.* ¶¶ 7–8 (citing 29 U.S.C. § 1002(5), (9), (11), (12)); ECF No. 10-2 at 2.

In 2016 and 2019, Westwood (and SEIU Healthcare Michigan) entered into collective bargaining agreements ("CBAs"), obligating Westwood to contribute $.40 per hour to the pension fund on behalf of covered employees.  *See* ECF No. 10-2 at 2, 21, 53; Compl. ¶ 8.  Through the CBAs, Westwood was bound by the pension fund's Amended and Restated Agreement and Declaration of Trust (the "trust agreement").  Compl. ¶ 10.  The trust agreement gave the board of trustees the power to establish procedures, rules, and regulations necessary to carry out the operation of the pension fund.  ECF No. 10-2 at 3.  With that power, the board of trustees adopted the Statement of Policy for Collection of Delinquent Contributions (the "collection policy").  *Id.* at 3, 85–94; Compl. ¶ 9.  The collection policy mandates that participating employers must pay contributions and submit supporting remittance reports to the pension fund by the 15th day of the month after the month in which the work was performed.  ECF No. 10-2 at 3, 86–87; Compl. ¶ 9.  The collection policy further provides that unpaid or untimely contribution payments are subject to interest calculated at a rate of 10% per year and compounded monthly from the date the payment is due until it is paid.  ECF No. 10-2 at 92.  And if the pension fund pursues litigation to collect delinquent amounts, the participating employer must also pay liquidated damages in the greater of the amount of the interest due or 20% of the principal amount due.  *Id.*

Beyond paying base contributions and submitting supporting remittance reports, participating employers like Westwood must also pay supplemental contributions under Plaintiffs' rehabilitation plan.  Since 2009, the pension fund's actuary has certified the pension fund as in "critical

status." Compl. ¶ 16; ECF No. 10-2 at 2, 67.  Under the Pension Protection Act of 2006, this status entitled the board of trustees to adopt its rehabilitation plan to "enable the plan to cease to be in critical status by the end of the plan's rehabilitation period."  ECF No. 10-2 at 2, 67; Compl. ¶¶ 15–18 (citing 29 U.S.C. § 1085(e)(3)).  Under the rehabilitation plan, which was in effect during the times relevant to this litigation, participating employers could choose from two supplemental-contribution options, the default or preferred schedule.  Compl. ¶ 18; ECF No. 10-2 at 68, 72–75. In 2012, Westwood elected the preferred schedule and agreed that its provisions would be "automatically" adopted in all future contracts.  ECF No. 10-2 at 2, 83; Compl. ¶ 20.  Under that schedule, Westwood was required to pay supplemental contributions of 132% of the base contributions for May 2020 through April 2021, 150% for May 2021 through April 2022, and 169% for May 2022 and afterward.  ECF No. 10-2 at 2; Compl. ¶ 20.

In March 2022, Plaintiffs sued Westwood for delinquent contribution payments and unsubmitted remittance reports in violation of the CBAs, the rehabilitation plan, the collection policy, and ERISA.  *See* Compl.  As for contributions, the complaint alleged, Westwood entirely failed to pay contributions owed to the pension fund for April, June, October, and December 2020, and April 2021 through August 2022.  *Id.* ¶¶ 24, 26; ECF No, 10-2 at 3, 96.  And although Westwood ultimately paid contributions owed for May, July through September, and November 2020, and January through March 2021, it failed to make those payments on time.  Compl. ¶ 25; ECF No. 10-2 at 3, 96.  As for remittance reports, Westwood allegedly failed to provide such reports for June and October 2020 and April 2021 through August 2022.  Compl. ¶ 26; ECF No. 10-2 at 3.

Westwood did not respond to Plaintiffs' complaint, so Plaintiffs requested an entry of default, which the Clerk of Court entered.  *See* ECF Nos. 6, 8.  In September 2022, Plaintiffs moved

for a default judgment seeking an order for: (1) monetary damages of $72,408.84 in unpaid contributions, $8,192.59 in interest through September 15, 2022, $14,481.77 in liquidated damages, $11,440.80 in attorney's fees and costs, and an additional $20.39 in interest per day from September 15, 2022, through the date of judgment; (2) an injunction requiring Westwood to provide all remittance reports not previously submitted; and (3) an injunction requiring Westwood to comply with its obligation to pay contributions to the pension fund for hours worked by covered employees for months after August 2022.  ECF No. 10 at 1; ECF No. 10-1 at 9; ECF No. 10-4.

## II.    Legal Standard

"A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics."  *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 66–67 (D.D.C. 2011) (citing *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980)).  But "[b]ecause courts strongly favor resolution of disputes on their merits," a default judgment "usually is available 'only when the adversary process has been halted because of an essentially unresponsive party.'"  *Id.* at 67 (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Federal Rule of Civil Procedure 55 provides a "two-step procedure" for obtaining a default judgment.  *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 102 (D.D.C. 2015).  First, after a defendant "has failed to plead or otherwise defend," the plaintiff may request that the Clerk of the Court enter default against that defendant.  Fed. R. Civ. P. 55(a).  Second, after default is entered, the plaintiff may move for a default judgment.  Fed. R. Civ. P. 55(b)(2).  "By providing for a two-step process, Rule 55 allows the defendant the opportunity to move the court to set aside the default before the court enters default judgment."  *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass, LLC*, 635 F. Supp. 2d 21, 23 n.1 (D.D.C. 2009); *see also* Fed. R. Civ. P. 55(c).

4

An entry of default "establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Elite Terrazzo*, 763 F. Supp. 2d at 67 (collecting cases). But this "does not automatically establish liability in the amount claimed by the plaintiff." *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013). Rather, "the court is required to make an independent determination of the sum to be awarded," and it is afforded "considerable latitude" in making that determination. *Pescatore v. Palmera Pineda*, 345 F. Supp. 3d 68, 70 (D.D.C. 2018) (citations omitted). A plaintiff moving for default judgment must therefore prove to the Court the requested damages "to a reasonable certainty." *Elite Terrazzo*, 763 F. Supp. 2d at 68. In support, the plaintiff may offer "detailed affidavits or documentary evidence" on which the Court may rely and is "entitled to all reasonable inferences from the evidence offered." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). The Court may conduct a hearing to determine damages, Fed. R. Civ. P. 55(b)(2), but need not do so "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment," *Elite Terrazzo*, 763 F. Supp. 2d at 67 (alterations in original) (internal quotation marks omitted).

## III.   Analysis

As explained below, the Court will grant the motion for default judgment and award most of the relief requested. First, it finds it has personal jurisdiction over Westwood. Second, it finds that Plaintiffs have adequately alleged their claims for liability. Third, it will award monetary damages, interest, liquidated damages, and attorney's fees and costs. Fourth, the Court will order Westwood to submit unsubmitted remittance reports but decline to order it to timely pay future contribution payments.

### A.    Personal Jurisdiction

"[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Safex Found., Inc. v. Safeth, Ltd.*, 538 F. Supp. 3d 1, 7 (D.D.C.

2021) (cleaned up).  An ERISA action may be brought "in the district where the plan is adminis-tered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).  "ERISA's venue provision has been interpreted to authorize nationwide service of process." *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 28 (D.D.C. 2013) (quotation omitted).  When a statute allows for nationwide service of process, "minimum contacts with the United States suffice" for a court to exercise personal jurisdiction over a defendant. *Id.* (citing *SEC v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004)).

The Court has personal jurisdiction over Westwood.  Plaintiffs sued in this District, where the pension fund is administered.  Compl. ¶¶ 3, 5; 29 U.S.C. § 1132(e)(2).  And Plaintiffs served Westwood (through its chief financial officer) in the district where it resides, as the Federal Rules permit.  *See* Compl. ¶ 7; ECF No. 5 at 1; Fed. R. Civ. P. 4(h)(1)(B) (permitting service on a cor-poration through "an officer, a managing or general agent, or any other agent authorized by ap-pointment or by law to receive service of process").  And as a corporation residing and operating a nursing and rehabilitation facility in the state of Michigan, Compl. ¶ 7, Westwood has sufficient "minimum contacts with the United States" to give rise to personal jurisdiction in this Court, *see Mazzarino*, 955 F. Supp. 2d at 28; *see also, e.g.*, *Bricklayers & Trowel Trades Int'l Pension Fund v. Kel-Tech Constr., Inc.*, 319 F. Supp. 3d 330, 340 (D.D.C. 2018).

## B.    Liability

Next, the Court finds that Westwood is "a totally unresponsive" party.  *See SEIU Indus. Pension Fund v. Liberty House Nursing Home of Jersey City, Inc.*, 232 F. Supp. 3d 69, 76 (D.D.C. 2017); *Elite Terrazzo*, 763 F. Supp. 2d at 67–68.  Westwood was served in May 2022 and, since then, has failed to respond to the complaint, move to set aside the default entered by the Clerk, oppose Plaintiffs' motion for default judgment, or otherwise defended this action.  *See* ECF

6

Nos. 5, 8.  Westwood is thus liable for the well-pleaded allegations in the complaint.  *Elite Ter-razzo*, 763 F. Supp. 2d at 67; *see also, e.g.*, *Bricklayers & Trowel Trades Int'l Pension Fund v. KAFKA Constr., Inc.*, 273 F. Supp. 3d 177, 180 (D.D.C. 2017).  Upon review of Plaintiffs' factual allegations and the relevant law, the Court concludes that Plaintiffs' allegations are, in fact, well-pleaded, and will enter default judgment for Plaintiffs as to Westwood's unpaid and untimely con-tributions.

Westwood is liable for those contributions it failed to pay.  "ERISA requires employers to make contributions to multiemployer plans 'in accordance with the terms and conditions of' the relevant collective-bargaining agreements."  *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 147–48 (D.D.C. 2016) (quoting 29 U.S.C. § 1145).  Further, "[a]ny failure to make a contribution under a [rehabilitation plan] schedule of contribution rates provided under [29 U.S.C. § 1085(e)] shall be treated as a delinquent contribution under section 1145 of this title and shall be enforceable as such."  29 U.S.C. § 1085(e)(3)(C)(iv).  Here, Plaintiffs alleged that West-wood entered into CBAs that required it to contribute base contributions of $.40 per hour to the pension fund for covered employees.  *See* ECF No. 10-2 at 2, 21, 53; Compl. ¶ 8.  And Plaintiffs alleged that Westwood accepted the rehabilitation plan's preferred schedule, which Westwood agreed would "automatically" apply to future contracts.  ECF No. 10-2 at 2, 83; Compl. ¶ 20. Under that preferred schedule, Westwood was required to pay supplemental contributions above the base amounts.  ECF No. 10-2 at 2, 74–75, 83; Compl. ¶ 20.  Plaintiffs alleged that Westwood failed to remit base and supplemental contributions as required for April, June, October, and De-cember 2020, and April 2021 through August 2022, as required by the CBAs.  *See* Compl. ¶¶ 24, 26–27; ECF No. 10-2 at 96.

Along with unpaid contributions, Westwood is liable for its untimely contributions.  To be sure, "ERISA provides for interest and liquidated damages only on contributions that are *unpaid*, not contributions that are made late but paid before suit is brought."  *Kel-Tech*, 319 F. Supp. 3d at 342.  But the collection policy here, which binds Westwood,[1] establishes liability for interest and liquidated damages on late contribution payments.  *See* Compl. ¶ 13; ECF No. 10-2 at 87–88, 96.  To that end, Plaintiffs have adequately alleged that Westwood is liable for interest and liquidated damages on late payments made for May, July through September, and November 2020, and January through March 2021.  Compl. ¶ 25; ECF No. 10-2 at 96.

For these reasons, Plaintiffs have adequately pleaded a claim under ERISA, the CBAs, the rehabilitation plan, and the collection policy for unpaid and untimely contributions, and the Court will enter default judgment for Plaintiffs as to those contributions.

## C.    Monetary Damages

"In cases where 'a court awards a default judgment against a defendant for contributions owed under a collective bargaining agreement,' such as this one, Section 502(g)(2) of 'ERISA provides that the court may award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; and (4) reasonable attorney's fees and costs of the action.'"  *Kel-Tech*, 319 F. Supp. 3d at 343–44 (quotation omitted); *see also* 29 U.S.C. § 1132(g)(2)(A)–(D).  The Court addresses each in turn.

---

[1] The board of trustees adopted the collection policy pursuant to its authority under the trust agreement.  Compl. ¶ 9; ECF No. 10-2 at 3.  The trust agreement binds employers "upon the signing of a collective bargaining agreement or participation agreement, or upon remitting contributions to the Fund," and such employers are also bound "to all rules and regulations adopted by the Trustees" (like the collection policy).  Compl. ¶ 10.  Westwood, which has entered CBAs and remitted contributions to the pension fund, is thus bound by the trust agreement and the resulting collection policy.  *See* Compl. ¶ 8; ECF No. 10-2 at 5–80, 96.

First, the Court finds that Plaintiffs have, to a reasonable certainty, proven that Westwood owes $72,520.23 in unpaid contributions. *See Elite Terrazzo*, 763 F. Supp. 2d at 687. To support their request for unpaid contributions, Plaintiffs submitted the declaration of Yolanda Montgomery, the pension fund's Assistant Executive Director and Counsel. ECF No. 10-2 at 1, 3; *see R.W. Amrine*, 239 F. Supp. 2d at 30 ("[C]ourt[s] may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment."). Montgomery attached to her declaration a spreadsheet, prepared by pension-fund contract technicians, detailing the contribution amounts owed by Westwood for the relevant months. ECF No. 10-2 at 3, 95–96. To make the spreadsheet, the contractors pulled data from the pension fund's electronic database that contains the hours reported, amounts received, and amounts due for Westwood between April 2020 and August 2022. *Id.* at 3. For June and October 2020 and April 2021 through August 2022, Westwood did not provide required remittance reports that would have allowed the pension fund to calculate the accurate amounts owed. *See* ECF No. 10-1 at 9; ECF No. 10-2 at 3; ECF No. 10-4 ¶ 3. The report therefore estimates the amounts owed for those months based on the hours reported in the previous month. ECF No. 10-2 at 3, 96; *see also* ECF No. 10-2 at 88 (The collection policy expressly permits the board of trustees to estimate unpaid contributions based on "the most recent remittance report submitted to the Fund."). The Court approves of this calculation as a reasonable way to estimate the amounts of those unpaid contributions. *See Int'l Painters & Allied Trades*

*Indus. Pension Fund v. LaSalle Glass & Mirror Co.*, 267 F.R.D. 430, 434 (D.D.C. 2010) (collecting cases). The sum of the certain and estimated unpaid contributions is $72,520.23, which the Court will award in monetary damages.[2]

Second, the Court finds that Plaintiffs have adequately proven the interest that has accrued on Westwood's unpaid and untimely contributions. *See* 29 U.S.C. § 1132(g)(2)(B). ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]." 29 U.S.C. § 1132(g). Here, the pension fund's collection policy, which, as the Court has noted, binds Westwood, calculates interest at a rate of 10% per year, from the date the payment is due to the date paid. ECF No. 10-2 at 92. The Court will also award Plaintiffs interest on Westwood's late contributions, per the collection policy. *See* Compl. ¶ 13; ECF No. 10-2 at 87–88, 96. Montgomery's declaration details the interest Westwood owes for: unpaid contributions for April, June, October, and December 2020, and April 2021 through August 2022; and late payments for May, July through September, and November 2020, and January through March 2021. ECF No. 10-2 at 96. The total of that interest, Plaintiffs calculate, is $8,192.59. *Id.* at 4, 96; ECF No. 10-1 at 7. As the Court finds this amount reasonably certain, the Court will award Plaintiffs interest of $8,192.59. *See Elite Terrazzo*, 763 F. Supp. 2d at 687. Plaintiffs also seek daily interest from September 15, 2022, through the date of the Court's judgment (i.e., prejudgment interest), which Plaintiffs arrived at by calculating "10% of the total contributions due divided by 365." ECF No. 10-1 at 7; ECF No. 10-2 at 4.

---

[2] Plaintiffs request, and Montgomery represents, that Westwood owes them a little less: $72,408.84. And indeed, that is the sum reflected at the bottom of the "Contribution Overpayment/Underpayment" column in the spreadsheet attached to Montgomery's declaration. ECF No. 10 at 1; ECF No. 10-2 at 3, 96. But that sum appears to result from a math error. According to the Court's own calculations adding together the various amounts listed in the column, the correct total is $72,520.23, and so it will award that amount. *See* ECF No. 10-2 at 96.

Thus, the Court calculates prejudgment interest at $19.87 per day.[3]  Three hundred and seven days have passed since September 15, 2022, so the Court will award an additional $6,100.09 in interest.

Third, Plaintiffs have adequately supported their request for liquidated damages on the unpaid contributions.  ERISA entitles Plaintiffs to a liquidated damages award of "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)."  29 U.S.C. § 1132(g)(2)(C); *see also* ECF No. 10-2 at 88.  Twenty percent of the total unpaid contributions of $72,520.23 is $14,504.05, which would be greater than a second award of interest.[4]  *See Kel-Tech*, 319 F. Supp. 3d at 344 (citing U.S.C. § 1132(g)(2)(C)); ECF No. 10-2 at 4; ECF No. 10-1 at 7.  Thus, the Court will award Plaintiffs liquidated damages of $14,504.05.[5]

---

[3] Plaintiffs request prejudgment interest at the slightly higher rate of $20.39 per day, although they do not explain, and the Court cannot determine, how they arrived at that number.  ECF No. 10-1 at 7.  As previously explained, the Court calculates the "total contributions due" as $72,520.23.  And ten percent of that sum divided by 365 is $19.87.  The difference is not explained by Plaintiffs' slightly different calculation of the total contributions due, because that sum— $72,408.84—yields a rate of $19.84 per day.

[4] Plaintiffs request a little less in liquidated damages:  $14,481.77. ECF No. 10 at 1; ECF No. 10-1 at 7.  But again, the Court has found that the sum of unpaid contributions is $72,520.23 and so calculates liquidated damages as twenty percent of that figure.  In this instance, the difference between Plaintiffs' request and the Court's award is directly attributable to the slight difference in unpaid contributions calculated.

[5] Plaintiffs also allege in the complaint that Westwood "owes . . . liquidated damages on th[e] *late* payments" from May, July through September, November 2020, and January through March 2021.  Compl. ¶ 25 (emphasis added); *see also id.* ¶ 13(b).  But Plaintiffs do not appear to seek a separate award of liquidated damages for these late payments in their motion for default judgment or the supporting memorandum, Montgomery declaration, or proposed order.  *See* ECF No. 10 at 1; ECF No. 10-1 at 7; ECF No. 10-2 at 4; ECF No. 10-4 ¶ 12.  Thus, the Court cannot determine them to a reasonable certainty, and so it will not award any liquidated damages for Westwood's late payments.  *See, e.g., Kel-Tech*, 319 F. Supp. 3d at 344 (Where the "Plans have not calculated their damages . . . they have failed to show the amount of interest and liquidated damages due 'to a reasonable certainty' on the current record.").

Fourth, the Court finds that Plaintiffs' requests for attorney's fees and costs are both supported and reasonable.  ERISA itself provides that in cases like this one, the Court must award "reasonable attorney's fees and costs of the action, to be paid by the defendant."  29 U.S.C. § 1132(g)(2)(D).  Moreover, the CBAs here provide that "[i]n the event the employer does not remit to the Union the dues deducted from the employee's paychecks as required under this Agreement the Employer shall reimburse the union for all legal and/or other costs incurred by the Union in collecting such money."  *See* ECF No. 10-2 at 8, 38.  Plaintiffs therefore request $10,708.50 in attorney's fees and $732.30 in costs, for a total of $11,440.80.  ECF No. 10-3 at 2–3.  To establish these amounts, Plaintiffs provide the declaration of Kathleen Keller, an attorney from the law firm that represents the pension fund.  ECF No. 10-3.  Keller attached to her declaration a spreadsheet outlining the number of hours worked by the law firm's attorneys and paralegals with a description of the work performed, the rates charged, and the timekeepers' identities.  *See id.* at 5–9 (charging hourly rates of $300 for senior attorneys, $200 for junior attorneys, and $135 for paralegals).  Plaintiffs' request for $10,708.50 in attorney's fees, which accounts for 32.6 hours of attorney work and 25.1 hours of paralegal work, is reasonable.  *See id.* at 3; *see also, e.g.*, *Smith & Rogers*, 201 F. Supp. 3d at 149 (finding attorney's fees reasonable based on hourly rates as high as $615 for the plaintiff's attorney and $170 for the assigned paralegal).  The request for $732.30 in costs, which covers research, filing, and service expenses, is also reasonable.  *See* ECF No. 10-3 at 3, 8. Thus, the Court will award attorney's fees and costs of $11,440.80.

In sum, the Court will award Plaintiffs the following monetary damages: (1) $72,520.23 in unpaid contributions; (2) $8,192.59 in interest plus prejudgment interest of $6,100.09; (3) $14,504.05 in liquidated damages; and (4) $11,440.80 in attorney's fees and costs.

**D.      Injunctive Relief**

Plaintiffs also ask the Court for an injunction requiring Westwood (1) to turn over to the pension fund all remittance reports for hours worked by covered employees for the months not previously submitted: June and October 2020 and April 2021 through August 2022; and (2) "to comply with its ongoing obligation to pay the [pension fund] timely contributions for hours worked by covered employees for months after August 2022."  ECF No. 10 at 1; *see also* ECF No. 10-1 at 9; ECF No. 10-4.  The Court will enter an injunction granting the first request but not the second.

A "party seeking a permanent injunction must show the following: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *SEIU Nat'l Indus. Pension Fund v. Hebrew Homes Health Network, Inc.*, No. 17-cv-1215 (TNM), 2019 WL 4346325, at *19 (D.D.C. Sept. 12, 2019) (quoting *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015)).

Plaintiffs are entitled to their first request, for an order that Westwood submit to the pension fund previously unsubmitted remittance reports.  Trustees of benefit plans have "the right to review the records of employers contributing to such plans" under ERISA.  *Int'l Painters & Allied Trades Indus. Pension Fund v. Exec. Painting, Inc.*, 719 F. Supp. 2d 45, 53 (D.D.C. 2010).  And ERISA authorizes courts to grant "such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  In addition, the collection policy here required Westwood to submit remittance reports—detailing covered hours worked or owed, contributions owed, and contributions paid—on the 15th of the month following the month in which the hours are worked.  ECF No. 10-2 at 3, 86–87; Compl. ¶ 21.  Courts regularly find injunctive relief appropriate when, in circum-

stances like these, "the defendant has demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process." *Hebrew Homes*, 2019 WL 4346325, at *19; *see, e.g.*, *Exec. Painting*, 719 F. Supp. 2d at 53 ("Because the defendant has not complied with the CBAs or ERISA and has remained unresponsive throughout the judicial process, the court grants the plaintiffs' request for injunctive relief" and orders the defendant to "complete and file all outstanding remittance reports."); *Fanning v. AMF Mech. Corp.*, 326 F.R.D 11, 16 (D.D.C. 2018) (similar). Because Westwood has failed to provide remittance reports for June and October 2020 and April 2021 through August 2022, and has otherwise been unresponsive throughout this case, the Court finds it appropriate to require Westwood to submit those outstanding remittance reports, which are necessary for the pension fund to ensure that the accurate contributions are paid. *See* Compl. ¶¶ 26–27; ECF No. 10-2 at 3.

For Plaintiffs' second request—for an injunction ordering Westwood to comply with its ongoing obligations to make timely contribution payments—Plaintiffs have failed to establish an irreparable injury. *See* ECF No. 10 at 1. When a "monetary judgment might serve to alter the defendant's conduct as effectively as a permanent injunction would," an injunction may be "unnecessary." *Kel-Tech*, 319 F. Supp. 3d at 347. Thus, substantial but recoverable economic loss "alone will rarely constitute irreparable harm . . . because economic injuries are generally reparable with monetary damages in the ordinary course of litigation." *Hebrew Homes*, 2019 WL 4346325, at *19 (citations and internal quotation marks omitted); *id.* at *20 ("[T]his reasoning is especially applicable [where] the claims at issue arise under a statutory framework that provides for penalties and attorney's fees" and protects funds from collection expenses."). To establish irreparable injury to support an injunction, plaintiffs must instead go beyond economic

loss to show, for example, that such loss "threaten[s] the . . . very existence" of the movant's business. *Kel-Tech*, 319 F. Supp. 3d at 346 (citations omitted) (suggesting also that the risk of compromising "the actuarial soundness of the fund" or a defendant's "'precarious financial condition' [that] le[aves] the plan unlikely to recover its losses" could support an injunction for timely contributions).

Plaintiffs are not entitled to their second request because they have not shown that they will suffer irreparable injury or that the monetary damages for any future violations would be inadequate. *See Hebrew Homes*, 2019 WL 4346325, at *19; *see also Morgan Drexen, Inc.*, 785 F.3d at 694 ("Failing to satisfy any factor [required for a permanent injunction] is grounds for denying relief."). Plaintiffs do not claim, and the record does not reflect, that they will suffer any loss on top of the type of economic loss that the Court is able to redress through its award of monetary damages. For example, they do not claim that any future unpaid contributions by Westwood would "threaten the . . . very existence" of the pension fund. *See Kel-Tech*, 319 F. Supp. 3d at 346.

Therefore, the Court will grant an injunction requiring Westwood to submit to the pension fund the missing remittance reports for June and October 2020 and April 2021 through August 2022, but it will deny the request for an injunction requiring Westwood to timely remit future contribution payments.

## IV.    Conclusion

For all the above reasons, the Court will grant Plaintiffs' motion for default judgment and award monetary damages and an injunction requiring Westwood to provide the pension fund remittance reports for June and October 2020 and April 2021 through August 2022. The Court will

deny the motion to the extent that it seeks an injunction requiring Westwood to make timely payments to the pension fund in the future.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 19, 2023